UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK MULLEN | CIVIL ACTION |
| v. | NO. 19-11954 |
| DAIGLE TOWING SERVICE, L.L.C., ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is the plaintiff's motion for summary judgment to compel payment of maintenance and cure. For the reasons that follow, the motion is DENIED without prejudice as premature.

**Background**

This Jones Act litigation arises from a seaman's claim that he injured his lower back falling on the deck of a barge sometime in early December 2018. He did not report the incident or seek treatment until months later. In February 2019, when he was diagnosed with cancer, he quit his job to undergo chemotherapy treatment. It was then -- months after the alleged slip and fall -- when he first sought treatment for an alleged back injury; since in remission and undergoing conservative treatment for the alleged

employment-related injury, he now seeks to compel his former employer to pay maintenance and cure.

In 2018, Daigle Towing Service, LLC employed Mark Mullen as a deckhand aboard the M/V MISS LAURIE. "[S]omewhere in the beginning of December" of that year -- Mr. Mullen does not recall the date of the alleged incident[1] -- Mr. Mullen alleges that he slipped and fell on the wet deck of a barge in the tow of the MISS LAURIE at Tiger Fleet in Baton Rouge, Louisiana.[2] He did not report the incident. Nor did he seek medical attention in the

---

[1] Although he alleges in his complaint that the incident occurred on December 1, 2018, Mr. Mullen admitted in his deposition that he does not know which day he was injured.

[2] During his deposition, Mr. Mullen indicates that his injury occurred after the MISS LAURIE had returned six empty barges (owned by LaFarge North American, Inc.) to Tiger Fleet in Baton Rouge, Louisiana. Whichever day the incident occurred, it was around 2 o'clock in the morning, Mr. Mullen testified, and Omar Craighead was the captain on watch; others on the vessel, James Johnson (lead captain) and Bruce Ronquille (deckhand), were asleep in their bunks. (Daigle Towing points to the vessel logs to dispute that these four worked together during the month of December 2018; counsel for plaintiff concedes that the logs "seem to confirm defendant's assertion that captain Johnson, captain Craighead and deckhand Mullen were never on the vessel together"). Upon arrival at Tiger Fleet, Mr. Mullen says he began to tie up the lead barge using a line owned and provided by Lafarge. After he had secured the line around the bits on the deck of the barge, Mr. Mullen claims, the line broke. It was when he got out of the broken line's way and went to grab a replacement line that he allegedly slipped and feel backwards. He testified that the deck of the barge was slippery due to frost as well as a lack of nonskid. He testified that Omar Craighead, the captain on watch, saw him fall. According to Mr. Mullen, Capt. Craighead then woke up Ronquille to assist Mullen with tying off the barges.

days (or weeks) after the fall.  The onset of back pain, he alleges, was not immediate.

Mr. Mullen testified that his back began hurting days after he finished his shift, while he was off the boat staying in a hotel.[3]  Notwithstanding his alleged back pain -- while performing his regular duties, he alleges his back would worsen; while off, it would improve -- he says he continued to work his regular hitches (14 days on/7 days off).[4]

In February 2019, Mr. Mullen says he sought medical attention for the back pain he attributed to his alleged fall.[5]  After some

---

[3] Mr. Mullen does not recall whether he disembarked the vessel on the same day he fell or the following day.  By the end of his week off after the alleged incident, he testified that he decided to take off another week; he called Daigle Towing to advise that he was taking an extra week, but he did not report that the extra week off was due to back pain.  Daigle Towing points to the vessel logs to dispute this: the vessel logs indicate that Mr. Mullen never took off 14 consecutive days during the month of December 2018.  Rather, vessel logs for the MISS LAURIE show that Mr. Mullen worked from December 5, 2018 through December 11, 2018, then took seven days off before returning to work from December 19, 2018 through December 31, 2018. Daigle Towing submits rough vessel logs showing that the MISS LAURIE was on standby on December 1 and part of December 2, 2018, and that the vessel was not working at Tiger Fleet (where Mullen says the incident occurred) any time during December 1, 2, or 3, 2018.  Although the vessel logs show that the MISS LAURIE was working at Tiger Fleet on December 4, 2018, the logs do not indicate that Mr. Mullen was working.
[4] In the plaintiff's Statement of Uncontested Facts, he states that he worked "two weeks on and two weeks off" but he testified that that he worked "14 on and 7 off[.]"
[5] Daigle Towing disputes this timing, and submits medical records indicating that Mr. Mullen did not report back pain during his visits to East Jefferson General Hospital on February 4 or 25,

x-rays and lab work, on February 25, 2019, Mr. Mullen was diagnosed with cancer, non-Hodgkin's lymphoma. He stopped working that same month,[6] underwent treatment, and is now in remission. However, he claims that his back pain persists and prevents him from performing any type of manual labor.

In May 2019, Mr. Mullen was evaluated by Dr. Pedro Romaguera, who recommended an MRI of his lumbar spine. Dr. Romaguera also recommended an orthopedic consultation and determined that Mr. Mullen was not able to work. Mr. Mullen continues under the care of Dr. John Logan, an orthopedic surgeon, who has instructed Mullen not to return to work, recommended that he undergo (and performed) facet injections at L4-5 and L5-S1 bilaterally, and opined that he has not reached maximum medical improvement from the alleged work-related injury.

On May 15, 2019, Mr. Mullen's attorney, by letter to Daigle Towing, demanded payment of maintenance and cure benefits. Five

---

2019; rather, on those dates in February, he reported intermittent leg pain, lower abdominal pain, flank pain, and groin pain leading up to his cancer diagnosis. Daigle Towing submits that the medical records indicate that Mr. Mullen did not report any back pain to any medical professional until March 21, 2019, during one of his chemotherapy sessions when he stated that he fell sometime "in the fall."

[6] In February 2019, Mr. Mullen told Albert Daigle that he was resigning from Daigle Towing because he had cancer and needed to undergo chemotherapy treatment. Mr. Mullen did not tell Mr. Daigle that he had injured his lower back working on the MISS LAURIE.

months after the alleged incident occurred, this was the first notice to Daigle Towing that Mr. Mullen was claiming to have suffered a work-related injury sometime in "December of 2018." Twice more since then, Mr. Mullen's attorney has demanded maintenance and cure. Daigle Towing propounded discovery and launched an investigation into Mr. Mullen's claim for maintenance and cure. That investigation is ongoing.

On July 31, 2019, Mullen sued Daigle Towing Service, LLC, asserting Jones Act negligence, unseaworthiness and seeking to recover maintenance and cure as well as punitive damages associated with Jones Act negligence, unseaworthiness, and arbitrary failure to pay maintenance and cure.[7] In November 2019, Mullen was granted leave to amend his complaint to add Lafarge North America, Inc. as a defendant; Mullen alleges that Lafarge's negligence and the unseaworthiness of its barge contributed to his injury.

To date, Daigle Towing has not paid maintenance or cure. Mr. Mullen now seeks summary judgment compelling payment.

---

[7] Daigle Towing moved to dismiss Mullen's punitive damages claims based on Jones Act negligence and unseaworthiness; on September 11, 2019, the Court granted the motion as unopposed. Daigle Towing did not move to dismiss Mullen's claim for punitive damages based on arbitrary failure to pay maintenance and cure; that claim remains pending along with the Jones Act negligence and unseaworthiness claims as well as the claim seeking recovery of maintenance and cure.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with

conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Anderson, 477 U.S. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994)("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

*A.*

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." Meche v. Doucet, 777 F.3d 237, 244 (5th Cir. 2015)(quoting Jauch v. Nautical Servs., Inc., 470 F.3d 207, 212 (5th Cir. 2006)(citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 548 (5th Cir. 1968))). "'Maintenance is a daily stipend for living expenses,' whereas 'cure is the payment of medical expenses.'" Id. (citations omitted).

Under the general maritime law, a seaman like Mr. Mullen is entitled to maintenance and cure from his employer, for injuries incurred or aggravated in the service of the vessel, while incapacitated, until the seaman reaches maximum medical recovery. See The Osceola, 189 U.S. 158, 175 (1903), *superseded, in part, by the* Jones Act; see also Vaughan v. Atkinson, 369 U.S. 527, 531 (1962). This "broad" obligation arises regardless of either party's fault. See Augilar v. Standard Oil Co. of N.J., 318 U.S. 724, 730 (1943); see also Thomas v. Hercules Offshore Servs., L.L.C., 713 Fed.Appx. 382, 386 (5th Cir. 2018)(unpublished) (citing Betram v. Freeport McMoran, Inc., 35 F.3d 1008, 1012 (5th Cir. 1994)). This expansive remedy is not restricted to injuries

8

or illnesses caused by employment.  See 1 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 6-28 (5th ed. 2011)("[T]he obligation can arise out of a medical condition such as a health problem, or prior illness that recurs during the seaman's employment, or an injury suffered on shore."); see also Messier v. Bouchard Transp., 688 F.3d 78 (2d Cir. 2012)(seaman diagnosed with lymphoma could recover maintenance and cure where lymphoma, which was not known to employer or employee during period of employment and which occurred during service of the ship, but did not present symptoms until his service had ended).  Ambiguities or doubts regarding a seaman's entitlement to cure or the date of maximum medical improvement are resolved in favor of the seaman.  Vaughan, 369 U.S. at 532.

Consistent with the near-absolute nature of the right to maintenance and cure, a seaman's burden of proof on a maintenance and cure claim is slight:  he need only establish that he was injured or became ill while in the service of the vessel on which he was employed as a seaman, without willful misbehavior on his part.  See Aguilar, 318 U.S. at 732; see also 1 Schoenbaum, ADMIRALTY AND MARITIME LAW § 6-28; see also Fifth Circuit Pattern Jury Instructions: Civil, § 4.10 (2014 ed.).  Defenses to a claim for maintenance and cure "are few and narrowly applied." Silmon v. Can Do II, Inc., 89 F.3d 240, 242 (5th Cir. 1996)(citing

9

Aguilar, 318 U.S. at 730-31). Maintenance and cure may be awarded "even where the seaman has suffered from an illness pre-existing his employment." McCorpen, 396 F.2d at 548.[8]

When a seaman demands maintenance and cure, an employer is not obliged to immediately begin payments; rather, it may conduct a reasonable investigation of the claim and require corroboration without subjecting itself to compensatory or punitive damages. Boudreaux v. Transocean Deepwater, Inc., 721 F.3d 723, 728 (5th Cir. 2013); Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171 (5th Cir. 2005); Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir. 1987), *abrogated on other grounds by* Guevara v. Maritime Overseas Corp., 59 F.3d 1496 (5th Cir. 1995), *abrogated on other grounds by* Atl. Sounding Co., Inc. v. Townsend, 557 U.S. 404, 424 (2009). In the "escalating scale of liability" for failure to pay maintenance and cure, endorsed by the Fifth Circuit, the bottom floor is: "a shipowner who is...liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure." Morales, 829 F.2d at 1358. Next step up: If, after investigating the claim, the employer unreasonably rejects it, the employer is liable for

---

[8] Notwithstanding this general principle, a court will deny maintenance and cure when a seaman "knowingly or fraudulently conceals" his illness or injury from the shipowner at the time he was employed. Id.

10

both the maintenance and cure payments it should have made and for any compensatory damages caused by the unreasonable failure to pay. See Morales, 829 F.2d at 1358; see also Fifth Circuit Pattern Jury Instructions: Civil, § 4.10 (2014 ed.). And, finally, the ceiling: If the employer or vessel owner's failure to pay maintenance and cure was not simply unreasonable, but willful and wanton, then the plaintiff may recover punitive damages. See Townsend, 557 U.S. at 424; see also Fifth Circuit Pattern Jury Instructions: Civil, § 4.10 (2014 ed.).

*B.*

Mr. Mullen seeks summary relief compelling Daigle Towing "to immediately and retroactively institute maintenance and cure benefits from the date of first demand." He claims he was injured while in the service of the vessel, he has not reached maximum medical recovery, and he has not received any maintenance or cure benefits from his employer. Daigle Towing counters that the motion is at best premature and should be denied where, as here, it is in the midst of an investigation into whether an accident occurred and thus there is a genuine dispute as to whether it is obligated to pay maintenance and cure. The Court agrees.

Mr. Mullen submits that he slipped and fell, injuring his back in "early December 2018." To support his narrative, he offers his affidavit stating that he was so injured. Portions of Mr.

11

Mullen's deposition transcript submitted by the defendant show that Mr. Mullen testified that Captain Omar Craighead witnessed his fall and that Captain James Johnson and deckhand Bruce Ronquille were on board (but asleep) at the time of the incident. Mr. Mullen states that he took 14 days off after the alleged incident. He submits that several months after the incident, a few months after he resigned from Daigle Towing, he sought treatment for his back injury, which he related to the alleged slip and fall in December 2018, and that his physicians have opined that he has not reached maximum medical improvement. Based on these facts, he seeks an order compelling Daigle Towing to pay maintenance and cure.

Daigle Towing submits that Mr. Mullen has failed to carry his burden to show that he suffered an injury while in the service of the MISS LAURIE. Daigle Towing identifies evidence in the record that it says calls into question whether an incident actually occurred on the MISS LAURIE in December 2018 in which Mullen suffered a fall and resulting back injury. Daigle Towing offers evidence it says undermines the credibility of Mullen's allegations that he was injured while working on the MISS LAURIE in early December 2018. It is undisputed that neither Mullen nor any member of the crew of the MISS LAURIE reported that Mr. Mullen was injured. Daigle Towing submits vessel logs, which -- rather

than corroborate Mr. Mullen's narrative of the alleged incident -- indicate that Mr. Mullen did not take 14 days off and was not part of a crew consisting of Craighead, Johnson, and Ronquille during the month of December 2018. Medical records submitted by Daigle Towing indicate that Mr. Mullen did not complain to any medical provider about back pain related to the alleged "early December 2018" incident until March 21, 2019, despite seeing several doctors to report symptoms diagnosed in February 2019 as lymphoma; and even in so reporting, on March 21, Mr. Mullen stated he fell "in the fall." Finally, in a supplemental paper, Daigle Towing reports that the plaintiff failed to attend an Independent Medical Evaluation that was scheduled in December 2019.

Summary judgment compelling payment of maintenance and cure at this time and on this record is patently inappropriate. The Court may not make credibility determinations. Mr. Mullen claims that he was injured in December 2018, and Daigle Towing has submitted evidence creating factual controversies concerning whether the alleged incident occurred. Viewing the evidence in the light most favorable to Daigle Towing, Mr. Mullen failed to report his alleged work-related injury until five months after it occurred; he cannot recall which day he was injured; the vessel logs contradict some of the plaintiff's testimony regarding the circumstances surrounding the alleged incident; the record

13

indicates that the plaintiff first complained of back pain to a medical provider more than three months after the alleged incident and several weeks after he had complained of symptoms diagnosed as lymphoma. Although the only obstacle to the plaintiff's entitlement to maintenance and cure is his ability to carry his burden to show that an incident occurred in which he was injured in the service of the MISS LAURIE, factual controversies remain as to whether he slipped and fell in December 2018 causing him to injure his back. The plaintiff has not shown entitlement to judgment as a matter of law on his maintenance and cure claim.

More pertinent to the pending motion to compel payments, Daigle Towing submits that it is still investigating the alleged incident and Mr. Mullen's prior medical and accident history. To be sure, Daigle Towing is entitled to investigate Mr. Mullen's claim that he was injured while in the service of the MISS LAURIE before paying maintenance and cure benefits. Although Mr. Mullen suggests that Daigle Towing "has had ample time to investigate," he offers no case literature precluding further investigation on similar facts, or any support for his suggestion that Daigle Towing's investigation is unreasonable or unreasonably lax.[9]

---

[9] The Court has no doubt that Mr. Mullen will pursue the claims he has alleged for compensatory or punitive damages if he obtains evidence to support theories of unreasonable or arbitrary withholding of maintenance and cure.

Discovery is in its relatively early stages.[10] Genuine disputes as to certain facts persist and Daigle Towing is entitled to a reasonable investigation into: (1) whether Mullen sustained a low back injury in an unreported slip-and-fall incident that occurred "sometime in the early part of December 2018" while in the service of a towing vessel; and (2) whether Mullen's complaints of lower back pain are causally related to his alleged work-related injury or are instead attributable to an unrelated pre-existing injury or his February 2019 diagnosis of non-Hodgkin's lymphoma and subsequent treatments.

Accordingly, IT IS ORDERED: that the plaintiff's motion for summary judgment to compel payment of maintenance and cure is DENIED without prejudice as premature.

New Orleans, Louisiana, January 8, 2020

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[10] Daigle Towing submits that its investigation has been delayed by Mr. Mullen's failure to show up for an IME set in December 2019.